[No. 15831. Department Two. August 10, 1920.]

W. F. DOONAN, *Appellant*, v. R. ROSSI, *Respondent*.[1]

BILLS AND NOTES (140)—CHECKS—INDORSEMENT AND DELIVERY— EVIDENCE—SUFFICIENCY. In an action on checks issued to and indorsed by defendant, in which defendant denied the indorsement and alleged that he lost the checks and immediately stopped payment, plaintiff's evidence is sufficient to make a *prima facie* case, and it is error to grant a nonsuit, where witnesses testified that defendant indorsed the checks, or similar ones, and delivered them to a third person, who gave them to plaintiff in Montana as part payment for liquor purchased, and that such third person upon his return had a dispute with defendant, who then threatened to stop payment on the checks unless he received more money.

SALES (127)—ACTION FOR PRICE—DEFENSES—GOODS SOLD FOR ILLEGAL PURPOSE. The fact that the vendor of liquor knew, or should have known, that it was purchased for the purpose of illegal sale in another state, does not bar an action on checks given for the purchase price, unless it was a part of the contract of sale that it should be so used or sold, or the vendor participated in the transaction otherwise than in the mere making of the sale.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered March 6, 1920, upon granting a nonsuit, dismissing an action to recover on traveler's checks issued by a bank. Reversed.

*Allen, Winston & Allen*, for appellant.

*Charles P. Lund*, for respondent.

[1]Reported in 191 Pac. 865.

TOLMAN, J.—Appellant, as plaintiff, brought this action against the Old National Bank to recover $500, evidenced by seven traveler's checks issued by it to R. Rossi. By stipulation, Rossi was substituted for the bank as defendant, and he, and not the bank, will be hereinafter referred to as the respondent. At the close of plaintiff's case, the trial court sustained a motion to dismiss the action because of the insufficiency of the evidence, and this appeal followed.

It fairly appears from the evidence introduced that, on October 17, 1918, the Old National Bank issued to respondent seven traveler's checks, three for $100 each, and four for $50 each, all payable to the order of respondent. A little later in the same month these same checks were, by one Frank Warren, delivered to appellant at Troy, Montana, as part of the purchase price of certain whiskey then sold and delivered by appellant to Warren. Appellant was engaged lawfully in the liquor business in Montana, having a license under the laws of that state then in force, and neither inquired or knew that the liquor was to be brought to Washington in violation of its laws, though there is enough in the record to indicate that he might very well have suspected Warren of such intent. Thereafter respondent stopped payment on the checks, and when presented in due course, payment was refused.

At the time in question, Warren was conducting a garage in the city of Spokane, and respondent either kept his automobile there or had it there for repairs. Two witnesses testified that respondent was frequently at Warren's garage, and for several days had tried to get different men to take his automobile and go to Montana for liquor, and finally, after several attempts, he induced Warren to agree to go, on the understand-

ing that respondent would furnish the car and the money, and the profits derived from a resale of the liquor would be equally divided. Both of these witnesses testified in detail that respondent, in the garage office, produced these or similar checks, indorsed or countersigned them, and having done so, said, in effect, that he had signed his name on the wrong line, but that the checks would be good anyway, and delivered them all to Warren for the purpose already indicated. Another witness testified to a portion of this conversation heard by him, and further testified that, after Warren returned from Montana, he and respondent had a dispute over their settlement, and respondent told Warren that, unless he received $150 more, he would stop payment on the checks. To state these facts is sufficient to show that there was ample evidence in connection with the checks themselves, and the signatures which they bear, to make a *prima facie* case and put upon the respondent the burden of establishing his affirmative defense, which was that he did not deliver, assign or countersign the checks to any person, or at all, and that while the checks were in his possession, payable to himself, he lost them from his pocket, and immediately, and for that reason, stopped payment.

The respondent urges that, even though the evidence was sufficient, appellant cannot recover because he knew, or should have known, that the liquor was to be brought into Washington and there sold in violation of the law, and therefore the transaction was against public policy and void.

We have already had occasion to review the authorities upon this question, and after finding that the great weight of authority is to that effect, have laid down the rule:

"We are therefore of the opinion that, where property is sold absolutely and unconditionally, mere

knowledge on the part of the vendor that the property will thereafter be sold illegally, or applied to some illegal or immoral use, will not bar an action to recover the purchase price, unless it is a part of the contract of sale that the property shall be so sold or used, or unless the vendor aids or participates in the illegal objects otherwise than by the mere act of making the sale." *Washington Liquor Co. v. Shaw,* 38 Wash. 398, 80 Pac. 536, reported also in 3 Am. & Eng. Ann. Cas. 153, where an exhaustive note will be found.

We see no sufficient reason at this time for a departure from the rule there stated.

The judgment of the trial court is reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

HOLCOMB, C. J., FULLERTON, MOUNT, and BRIDGES, JJ., concur.